## JOHN I. WHITEHEAD'S CASE.

Suffolk.   November 10, 1942. — December 29, 1942.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Workmen's Compensation Act*, Incapacity; Procedure: appeal, further hearing, proceedings after rescript.

Findings, warranted by evidence, that an injury to an employee, resulting in amputation of a thumb and continuing pain, caused a cessation of work by him about two years later and handicapped him for work in the general labor market unless a selected type of work was provided for him, justified a decree under the workmen's compensation act awarding compensation for partial incapacity.

The mere fact that a decree awarding compensation for partial incapacity under the workmen's compensation act came before this court three years after the hearing before the Industrial Accident Board did not prevent the affirmance of the decree; there was adequate remedy elsewhere than in this court for changed circumstances after the hearing making the decree inappropriate.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board awarding compensation for partial incapacity.

In the Superior Court, the case was heard by *Forte*, J.

*E. Z. Dymsza*, for the insurer.

*W. A. Torphy & J. P. McGuire, Jr.*, for the claimant, submitted a brief.

QUA, J.   This case comes here after a decree in favor of the employee for compensation for partial incapacity, entered in the Superior Court upon the findings of the board. The questions are whether the evidence warranted those findings and whether the findings support the decree.

On April 30, 1936, the employee received a compensable injury by getting his hand caught in a machine for washing beer cans, as a result of which his left thumb was amputated. After receiving compensation until January 19, 1937, he then returned to work for the same employer at the same pay. He left work again on February 2, 1938, and has not worked since that time. Later in the year

1938 he sustained a foot injury which had nothing to do with his employment but which could have been found sufficient in itself to cause at least temporary total incapacity. The reviewing board found "on all the evidence" that "the employee is unable to do the exact same work which he was doing when injured," and that "apart from consideration of the disability due to his nonindustrial foot condition, he is handicapped for work in the general labor market unless a selected type of work is provided for him which he could perform with his hand in its present condition."

The evidence warranted the findings. The employee testified that his work when he returned was "not exactly the same"; that the machine had been perfected, and the cans "did not jam" as they had before his injury; that he no longer had "to run any belt"; that "they would not allow anybody to touch a can on the machine after that"; that he had to use both hands to pick up cans; that when he went back to work he used his injured hand as best he could, but not as well as when he had his thumb; that his hand ached all the time; that after he had worked ten or eleven months he could not sleep nights and his health was failing, so he "came out of work" and wanted to have his hand attended to; that he had altogether seven operations on his hand; that if you touched the stump of his thumb it would hurt; that it "would be the same as if you had anything that was sore"; that he was likely to strike it many times in handling bottles (part of his work); that he quit work "to have something done, that is, to get relief from the pain," because he was "getting tired of having that ache"; that his trouble was with his hand and his feet; and that "between the two" he "nearly went crazy." The medical testimony was conflicting, but there was evidence that the stump of the thumb would never be free from pain; that on account of the loss of his thumb he "is still somewhat restricted in what he can do, in other words, a selected occupation."

Although the employee succeeded in working at his former pay for a period of about a year after the injury to

his thumb, it could have been found that that injury and the necessity of further treatment on account of it were at least part of the reasons for his final cessation of work; that at the time of the hearing his thumb was in practically the same condition as when he left work; that since the injury to it he has never been quite fully able to perform his work as before; and that at the time of the hearing his thumb was still a cause of partial incapacity. The findings are sufficiently definite and support the decree. *Cahill's Case*, 295 Mass. 538. Compare *Demetrius's Case*, 304 Mass. 285.

The insurer argues that this case is governed by *Driscoll's Case*, 243 Mass. 236. But in that case the employee was fully able to perform substantially the same work as before his injury and finally left his employment for reasons unconnected with the injury. This case is within the authority of *Dragon's Case*, 264 Mass. 7, *Percival's Case*, 268 Mass. 50, *Hurwitz's Case*, 280 Mass. 477, *Manley's Case*, 282 Mass. 38, and *Royal's Case*, 286 Mass. 374.

The board rightly ruled that the supervening of a noncompensable injury sufficient in itself to produce total incapacity does not excuse the insurer from paying the compensation which would otherwise be payable for a compensable injury. *Walsh's Case*, 227 Mass. 341. No contention to the contrary has been made.

The insurer suggests that a period of three years has elapsed since the evidence was heard, and that changed circumstances since the hearing may have rendered the decree of the Superior Court inappropriate as to the subsequent period. This possibility does not call for action on our part. Adequate remedies exist. See *Long v. George*, 296 Mass. 574, 577; *Johnson's Case*, 242 Mass. 489, 495; *Nagle's Case*, 310 Mass. 193, 197, 198; G. L. (Ter. Ed.) c. 152, §§ 11, 12.

*Decree affirmed.*