JOSEPH RODERICK'S CASE.

Suffolk.    December 8, 1960. — March 31, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Workmen's Compensation Act*, Incapacity, Employment security benefits, Right to compensation, Recommittal to Industrial Accident Board.

Evidence in a workmen's compensation case required a conclusion that the employee's holding "himself out to be physically fit and able to work" at a time when he applied for benefits under the employment security law many months after he had received a compensable back injury applied to light work which he had performed since such injury and not to heavy work which he had performed prior thereto, and his application for unemployment benefits was not an admission that partial incapacity due to the injury was at an end. [333]

Receipt of benefits under the employment security law by an employee following his incurring an injury compensable under the workmen's compensation act did not preclude his obtaining workmen's compensation for periods for which he did not receive unemployment benefits. [333–334]

A finding by the Industrial Accident Board, in a workmen's compensation case involving an employee who sustained a compensable back injury and became partially incapacitated, that any partial incapacity the employee had following a certain date was due to a nonindustrial accident occurring "when an automobile knocked him to the ground and that his back was worse than before he was hit with the car," was not a finding that his former partial incapacity ended at that time and did not preclude him from obtaining compensation for partial incapacity thereafter. [334]

A decree of the Superior Court in a workmen's compensation case awarding the employee compensation for partial incapacity on the basis of ambiguous findings by the Industrial Accident Board as to the continuance or discontinuance of such incapacity was reversed and the case ordered recommitted to the board for clarification of its findings. [334]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Vallely, J.*

*Emile Dudziak,* for the insurer.

*John W. Costello, (William F. Dierkes* with him,) for the employee.

WILLIAMS, J.   The insurer, American Mutual Liability Insurance Company, has appealed from a decree of the Superior Court awarding the employee workmen's compensation under the provisions of G. L. c. 152.   There was evidence that on January 29, 1957, while working for H. Remis & Company, he sustained an injury to his back in lifting a heavy door.   He was out of work for six weeks.   He returned to work on March 5 and worked until March 27 when he finally left his job.   His average weekly wage was $84. In June or July he obtained work tending bar at $60 per week and worked in that capacity for approximately thirteen months ending in August, 1958.   From September, 1958, he worked for the city of Salem three days a week until December and five days a week until December 26, his weekly wage being $36.90.   In September, 1958, he applied for unemployment benefits holding "himself out to be physically fit and able to work," and received benefits from September 28 to June 27, 1959.   The occurrence of January 29, 1957, was one of a series of incidents affecting the condition of his back.   In 1952, he was out of work four weeks having hurt his back while lifting a pile of hides.   There was a recurrence of pain in his back in 1954, and in 1955 he was out of work two weeks from a backache caused by a fall.   On July 31, 1958, he was injured in a nonindustrial accident and in October of the same year was "laid up" for eight days after having been struck by an automobile. After the 1957 injury, he consulted Dr. Killoran and on June 11, 1958, became a patient of Dr. Levine.   Dr. Levine testified that the employee had "a chronic low back condition" and that the incident of 1957 which brought on a sharp pain "added insult to the area."   It "was an ade-

quate cause for the immediately following disability." In
using the words "immediate disability" the witness meant
for the "period of three months or whatever it was."
When the acute pain finally subsided, it is reasonable to say
that the patient "goes again into the general picture, in
other words, the back condition he now has is not due pri-
marily to that incident alone but that plus other incidents.
After the acute condition subsided his back condition then
was relegated to its status previously."

Dr. Killoran reported that X-rays showed the employee
had an "unstable fifth lumbar vertebra of moderate sever-
ity." Dr. Donovan, who examined for the insurance com-
pany, reported that the employee had a chronic recurrent
lumbosacral sprain.

The single member of the board found that "the em-
ployee on January 29, 1957, sustained a personal injury
arising out of and in the course of his employment, that is,
an aggravation of a preëxisting low back condition and . . .
that . . . he was totally disabled from and including Jan-
uary 30, 1957, to June 1, 1957, when he demonstrated that
he had an earning capacity of $60 per week working as a
bartender." He reserved the employee's rights to depend-
ency compensation under § 35A until evidence relating to
such compensation was produced. The reviewing board
adopted the findings of the single member except as to the
extent of the employee's incapacity and in this respect
modified the findings to read "that the employee was par-
tially incapacitated until September 28, 1958, when he ap-
plied for and received unemployment compensation benefits
at which time he held himself out to be physically fit and
able to work . . . that any partial incapacity the employee
had following this date was due to a nonindustrial accident
which he had sometime around October, 1958, when an auto-
mobile knocked him to the ground and that his back was
worse than before he was hit with the car." It ordered the
American Mutual Liability Insurance Company to pay total
incapacity compensation at the rate of $35 per week for a
period of thirteen weeks beginning January 30, 1957, and

at the rate of $40 a week thereafter through June 1, 1957; and that it pay dependency compensation at the rate of $9 a week during the same period. It further ordered that the insurer pay to the employee partial incapacity compensation at the rate of $24 a week based on an earning capacity of $60 a week and an average weekly wage of $84 from June 2, 1957, to September 28, 1958.

A judge of the Superior Court entered a final decree providing for compensation for total incapacity as ordered by the reviewing board except for the period from March 5, 1957, through March 27, 1957, when the employee admittedly was back at work. As to compensation based upon partial incapacity, the decree provided that no compensation was due from September 28, 1958, to November 29, 1958, and from January 3, 1959, to June 27, 1959, when the employee was receiving weekly unemployment benefits but except for those periods he was entitled to compensation of $24 per week from June 2, 1958, to May 23, 1960 ("the date of this Superior Court appeal"), and continuing in accordance with the provisions of § 35. The insurer appealed.

The fundamental issue presented by the appeal is the extent of the claimant's partial incapacity. The findings of the reviewing board, which of course must stand if supported by evidence, are not free from ambiguity. It finds that the employee was partially incapacitated until September 28, 1958, "when he applied for and received unemployment compensation benefits at which time he held himself out to be physically fit and able to work." We think, from all the evidence, that this "holding out" must be considered as meant to apply to the kind of light work in which he had recently engaged and not to the heavy work which he had performed previous to his 1957 injury. So construed his application for unemployment benefits did not amount to an admission that his partial incapacity was at an end. The receipt of unemployment benefits did not prevent future compensation for incapacity under c. 152. *Gallant's Case,* 329 Mass. 607, 609. It only precluded the employee from collecting workmen's compensation while

receiving benefits based on unemployment. *Pierce's Case,* 325 Mass. 649, 654–659. The board's further finding that any partial incapacity the employee had after September 28, 1958, was due to the nonindustrial accident which he had in October "when an automobile knocked him to the ground and that his back was worse than before he was hit with the car" falls short of a finding that his former partial disability ended at that time. The "supervening of a noncompensable injury . . . does not excuse the insurer from paying the compensation which would otherwise be payable for a compensable injury." *Whitehead's Case,* 312 Mass. 611, 613.

The board has made no specific finding relating to the end of partial incapacity. Its order that the insurer pay compensation to September 28, 1958, implies a finding that partial incapacity ended on that date but if such finding was intended it is not warranted by the evidence. The only event reported on that date is the employee's application for and subsequent receipt of unemployment benefits. That in itself had no effect on the continuing existence of partial incapacity, nor did the subsequent automobile accident. We think the case should be resubmitted to the board to clarify its findings. In view of Dr. Levine's testimony it could be found that after the acute condition resulting from the 1957 injury had subsided the employee had the same capacity for work as before but if so it should be so stated. Both insurer and employee are entitled to unambiguous findings as to the continuance or discontinuance of incapacity.

The decree of the Superior Court seems to have been based on an erroneous assumption that the board found that incapacity was still continuing. The decree is reversed and the case remanded to that court for recommittal to the board for further findings in conformity with this opinion.

*So ordered.*