GORHAM K. GOULD'S CASE.

Suffolk. November 8, 1968. — December 10, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Workmen's Compensation Act,* Continuing compensation, Payment by
employer to employee under disability plan.

In a workmen's compensation case in which the reviewing board found
upon substantial medical evidence that from a specified date to the
date of its order "and continuing" the employee was partially dis-
abled, the record disclosed no justification for a provision of the final
decree which "specifically reserved" the employee's "rights to fur-
ther partial incapacity compensation subsequent to" the date of the
board's order. [67]
The Industrial Accident Board in a proceeding under the Workmen's
Compensation Act, G. L. c. 152, is not required to interpret and apply,
in reduction of compensation payable to the employee under the act,
provisions of a private contractual plan for disabled employees main-
tained and solely financed by the employer. [72]

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the Workmen's Compen-
sation Act.

The case was heard by *Brogna,* J.

*Pasquale J. Ventola* for the employee.

*Philander S. Ratzkoff* for the self-insurer.

CUTTER, J. On April 15, 1966, a reviewing board of the
Industrial Accident Board adopted a single member's find-
ings, viz. that Gould received a compensable injury on
August 2, 1963, that he was totally disabled until October 9,
1963, and that from October 9, 1963, "to date *and continu-
ing* . . . [he] continues to be partially disabled" (emphasis
supplied). The Superior Court on May 25, 1966, recom-
mitted the case to the board "for further findings and
rulings . . . [on the issue] whether an offset against com-
pensation should be allowed the self-insurer [H. P. Hood &
Sons] for the" sums paid to Gould "under its [the self-
insurer's] benefit plans." On May 23, 1967, the reviewing

board made further findings. By decree entered August 30, 1967, the Superior Court enforced the board's order with two exceptions: (a) It "specifically reserved" Gould's "rights to further partial incapacity compensation subsequent to April 15, 1966"; and (b) it allowed an offset of $1,827, "for disability plan payments made to" Gould, against the workmen's compensation awarded by the board. Gould appealed. He contends that the decree should not have included either exception.

1. The record discloses no justification for the provision of the final decree which failed to allow partial incapacity compensation after April 15, 1966, the date of the reviewing board's original order. The self-insurer does not appear seriously to contend that Gould was not then partly disabled, or that there was any ground upon which the trial judge could reasonably disregard the board's findings of continuing partial disability. Those findings, which gave particular weight to the views of one medical witness, were based upon substantial medical evidence.[1] The trial judge should not have reserved for further determination the issue of continuing partial disability (see *Korobchuk's Case*, 280 Mass. 412, 416; *Silbovitz's Case*, 343 Mass. 372, 374), thus in effect shifting from the self-insurer to the employee the burden of taking steps to establish whether such disability had continued. See G. L. c. 152, § 12 (as amended through St. 1953, c. 314, § 6), and §§ 45 and 69B (each as amended through St. 1955, c. 174, § 5).

2. The board, upon the recommittal of the case to it, found that the self-insurer, in its capacity of employer, maintained a voluntary, noncontributory disability plan, financed solely by the employer. The purpose of this plan (described in a booklet which is before us), as the board found, "is to provide income for [an] employee unable to work because of sickness or injury. If the absence is due to a non-industrial condition the employee recovers 'full

---

[1] There was no recommittal of the case to the board on this issue on the ground that the subsidiary findings on the issue were insufficient to permit the board's conclusions. See *Herson's Case*, 341 Mass. 402, 407.

benefits' which is take-home pay, for a certain period of weeks and then a lesser proportion for an additional number of weeks, depending on the length of service. If the absence is due to an industrial accident, the . . . plan supplements the amount of workmen's compensation benefits so that the employee receives his 'take-home' pay. Under the . . . plan if the employee has received his benefits and it is later adjudicated that his disability is due to an industrial accident it is understood that the employee will reimburse the company for his . . . plan payments in the amount of the workmen's compensation payments found to be due for the same period." The board found that Gould received $2,762.64 from the disability plan as benefits, but held (without prejudice to or determination of any right of his employer to recover payments received by Gould under the plan) that it was without authority to order any credit or repayment.[2] As already noted, the decree of the Superior Court ordered a credit ($1,827) to the self-insurer for payments by it to Gould under the disability plan.

Whether a credit may be allowed in proceedings before the board, or upon judicial review of the board's decision, for payments such as those under the disability plan is a matter of first impression in Massachusetts. The workmen's compensation act does not deal with the problem directly. The two sections of the act said to be relevant are G. L. (Ter. Ed.) c. 152, § 38, and § 47, as amended through St. 1960, c. 792.[3]

Prior decisions of this court afford slight guidance. In *Pierce's Case*, 325 Mass. 649, 658–659, it was held that an employee (not suffering from a specific injury listed in

[2] The reasons for the difference between the plan payments of $2,762.64 and the $1,827 credit are not here material because the issue for decision is whether any credit may be allowed in this proceeding.

[3] Section 38 reads, "No savings or insurance of the injured employee independent of this chapter shall be considered in determining the compensation payable thereunder, nor shall benefits derived *from any other source than the insurer* be considered in such determination" (emphasis supplied). Section 47, as amended, reads, "No payment *shall be assignable or subject to attachment* or be liable in any way for debts, except to a veteran's agent or the commissioner of veterans' services as and to the extent permitted by section five of chapter one hundred and fifteen" (emphasis supplied). Under c. 152, § 1 (7), as amended by St. 1950, c. 277, § 2, the term "insurer" as used in c. 152, "shall include, wherever applicable, a self-insurer . . . ."

c. 152, § 36) was "barred from recovering [workmen's] compensation for the same period during which he was receiving benefits under the employment security act" and could not be permitted to enforce inconsistent claims under the two statutes. This court said (p. 658), "It is the general policy of the law that there cannot be double recovery for the same injury or loss." In *Mizrahi's Case*, 320 Mass. 733, 737–738, this court denied compensation under G. L. c. 152 to an employee who had already received larger benefits under the Longshoremen's and Harbor Workers' Compensation Act (33 U. S. C. § 901 [1940] et seq.) than he could have received under G. L. c. 152 for the same period of total incapacity. In *McLaughlin's Case*, 274 Mass. 217, 222, a workmen's compensation insurer was given credit for a payment, made by it in New Hampshire against a release, to a Massachusetts employer's employee (injured in New Hampshire) who was entitled to benefits under the Massachusetts compensation act (despite the New Hampshire release). In holding the Massachusetts act applicable, the court said, "The employee cannot have double compensation and the money received in New Hampshire must be accounted for." In *Gallant's Case*, 326 Mass. 507. *S. C.* 329 Mass. 607, 609, the court held that an employee is not entitled to relief, both by way of workmen's compensation and by way of unemployment benefits, for the same period of time (with an exception not here pertinent), but noted that "a part of a continuous period of unemployment may have been brought about by inability to find work and another part . . . by incapacity to perform work."[4] It was pointed out (p. 610) that c. 152 contained "no provision . . . for reimbursement of the unemployment fund" for payments made from it by mistake and that the "compensation

---

[4] Chief Justice Qua went on to say, "Except for such inconsistencies as are inevitable where two separate tribunals [the Industrial Accident Board and the Division of Employment Security] may be obliged to make findings of fact arising from the same set of circumstances, proper results will be reached if each of the respective agencies, required to administer these two forms of financial assistance, acts independently within its own sphere upon the evidence before it, simply according necessary recognition to the action of the other."

insurer never bound itself to make such reimbursement."
See *Roderick's Case*, 342 Mass. 330, 333–334. In *MacAleese's
Case*, 308 Mass. 513, 514–516, an uninsured contractor was
denied reimbursement from the compensation insurer of a
corporation (for which the contractor was working) for
medical payments advanced in an emergency by the con-
tractor to one of its own employees as a volunteer, despite the
fact that the insurer would have been liable for the medical
payments, if they had not been made by the contractor.[5]

In other jurisdictions, the decisions under differing statutes
have been by no means uniform. Some decisions have
allowed reimbursement from, or a credit against, workmen's
compensation payments for benefit or advance compensa-
tion payments of varying types theretofore made by an
employer to an employee, directly or indirectly, with respect
to matters which were also covered by compensation.[6]
Other decisions deny any such credits against workmen's
compensation payments and, in effect, leave the matter for
separate readjustment among the employee, the employer,
and any insurer concerned.[7] We regard none of these deci-

---

[5] At pp. 515–516, this court said, "A pertinent query is suggested . . . [by
the insurer]: 'Suppose a stranger made weekly payments to an employee in
amounts equal to what such employee's compensation would have been pend-
ing the determination of an insurer's liability, and, after a decision that the
insurer was obligated under the compensation act, both the stranger and the
employee appeared at the board to claim the compensation benefits due.
Would the board have the right to make an award to the stranger and deny
the employee recovery, or to order the employee to repay the stranger from
the accrued benefits?'"

[6] See e.g. *Lemmer* v. *Batzli Elec. Co.* 267 Minn. 8, 20–21 (restitutional re-
imbursement allowed to prevent double recovery by employee); *Strohmeyer* v.
*Southwestern Bell Tel. Co.* 396 S. W. 2d 1, 6–8 (St. L. Mo. Ct. App.). See
also *Lion Oil Co.* v. *Reeves,* 221 Ark. 5, limited by *Looney* v. *Sears Roebuck,*
236 Ark. 868, 871–872; *Watson* v. *Jones,* 233 Ark. 203, 204, but see *South-
western Bell Tel. Co.* v. *Siegler,* 240 Ark. 132, 134–137 ("benefits" distin-
guished from "advance payment of compensation"); *Oakland* v. *Workmen's
Comp. Appeal Bd.* 259 Cal. App. 2d 163, 166–168; *Ratzlaff* v. *Friedeman
Serv. Store,* 200 Kans. 430, 432–436.

[7] See e.g. *Alabam Freight Lines* v. *Chateau,* 57 Ariz. 378, 382–383; *Whipple*
v. *Industrial Commn.* 59 Ariz. 1, 8; *Butler* v. *Lee,* 97 Ga. App. 184; *Ashe* v.
*Barnes,* 255 N. C. 310, 314–315; Larson, Workmen's Compensation Law (and
1968 Suppl.), c. 18, esp. § 97.65. See also *Montgomery County* v. *Kaponin,*
237 Md. 112, 115–116; *Williams* v. *Department of Pub. Welfare,* 43 N. J.
Super. 473, 475–480; *American Bridge Div. U. S. Steel Corp.* v. *McClung,*
206 Tenn. 317, 327 (insurance payments where premium partly paid by em-
ployee); *Southland Life Ins. Co.* v. *Aetna Cas. & Sur. Co.* 366 S. W. 2d 245,
249 (Tex. Civ. App.).

sions (and none of the earlier Massachusetts cases) as determinative of the issue now before us under the Massachusetts statute (c. 152).

The language of c. 152, § 38 (fn. 3), does not expressly preclude a credit to, or reimbursement of, the self-insurer for payments made by it under its disability plan to the extent that those payments were, in effect, an advance on account of workmen's compensation benefits. We regard the words "savings or insurance" in § 38 as referring only to funds or insurance directly owned by the employee or wholly or partly paid for by him. See *Mizrahi's Case*, 320 Mass. 733, 737–738. The benefits under the disability plan paid by this self-insurer have been paid to the employee by the insurer and not from any "other source." See italicized portion of § 38, as quoted in fn. 3.

Section 47 (fn. 3) preventing the assignment or attachment of workmen's compensation payments has no direct application. What is now involved is merely a credit for payments already advanced on account of, or in lieu of, workmen's compensation. These payments obviously were not intended as a gratuity or as extra wages to the employee but as satisfying, in part, the self-insurer's obligation to provide workmen's compensation. To give a credit against such compensation ordered to be paid would involve no attachment or assignment of that compensation.

Far greater difficulty is presented by the circumstance that the allowance of such credits in proceedings before the board under c. 152 would introduce issues extraneous to the determination of the amount of compensation payable under the chapter. To determine whether such a credit should be given might require the board to interpret a wide variety of private arrangements between employers and their employees, some of which may be the result of collective bargaining. The situation is not comparable to that in most of the Massachusetts cases already cited, involving possible duplication of benefits under other statutes of Massachusetts, the United States, or other States. Disability plans like the one before us, the product of private contract, may take

many differing forms. Payments pursuant to c. 152 are made in accordance with statutory command and are under the administrative supervision of the board. See e.g. c. 152, § 6, dealing with agreements, subject to the approval of the board, for compensation, and § 48, dealing with lump sum payments (each section as amended through St. 1953, c. 314, § 6). The statutory rights in large measure supplant important common law rights of the employee. See § 24 (as amended through St. 1955, c. 174, § 5).

Chapter 152 as a whole reflects a strong public interest in preserving employees' statutory rights unimpaired by private arrangement not approved by the board. See e.g. § 46 (as amended through St. 1953, c. 314, § 6) limiting the power of employees to waive such statutory rights. Accordingly, we think that the board, in the absence of express statutory permission or direction, should not be required in compensation proceedings to interpret and apply the provisions of this private contractual disability plan.

3. The final decree is reversed and the case is remanded to the Superior Court for the entry of a new final decree consistent with this opinion. Costs of appeal are to be determined by the single justice.

*So ordered.*