# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

JAMES WILSON'S (dependent's) CASE.

No. 05-P-1269.

Suffolk. March 16, 2006. - July 27, 2006.

Present: PERRETTA, BROWN, & KAFKER, JJ.

*Workers' Compensation Act,* Dependency compensation, Double compensation.

In an action for dependency benefits under the Massachusetts Workers' Compensation Act, G. L. c. 152, §§ 31 and 38, payments received by an employee's unremarried widow from settling her loss of consortium claim with her husband's employer were required to be considered as income to her for the purpose of deciding whether she was or was not in fact fully self-supporting [5-7]; moreover, because the settlement payments were related to the claimant's own independent loss stemming from the workplace incident, G. L. c. 152, § 15, which was designed to guard against double recovery by an employee or dependent, did not apply [7-8].

APPEAL from a decision of the Industrial Accident Reviewing Board.

The case was heard in the Appeals Court by *Cowin*, J.

*Earlon L. Seeley, III,* for the claimant.

*Ronald C. Kidd* for the employer.

BROWN, J. This appeal concerns dependency benefits under G. L. c. 152, §§ 31 and 38, of the Massachusetts Workers' Compensation Act (Act).

The employee, James Wilson, suffered a work-related injury on October 1, 1985, while working for Western Massachusetts Electric Company (employer), a self-insurer. He received benefits under G. L. c. 152, §§ 34 and 34A, and died as a result of his injuries on May 1, 1997.

Upon his death, his widow, Judith Wilson (claimant), received weekly death benefit payments for 250 weeks until May 1, 2002, the maximum statutory period provided by G. L. c. 152, § 31. Prior to the expiration of that time period, she made claim for "continuing" death benefits, asserting that she was "in fact not fully self-supporting," a requirement of § 31, as appearing in St. 1982, c. 663, § 1, that must be established by a surviving spouse to be eligible for such benefits.[1]

The employer opposed the claim and requested discontinuance of the benefits, asserting that the claimant was fully self-supporting by virtue of payments made to her as a result of a voluntary settlement she had entered into with the employer. The settlement resolved a loss of consortium claim based on the same underlying workplace incident that had initially left her husband severely disabled. See *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507 (1980). The benefits dispute was submitted for decision before the Department of Industrial Accidents (department). In proceedings before the department, the parties agreed that the disposition of the benefits claim centered on an interpretation of G. L. c. 152, §§ 31 and 38. Section 38, as amended by St. 1986, c. 662, § 33, provides:

> "Except as expressly provided elsewhere in this chapter, no savings or insurance of the injured employee independent of this chapter shall be considered in determining compensation payable thereunder, *nor shall benefits*

---

[1]To be eligible for death benefits under § 31, a surviving spouse must not have remarried. The claimant has not done so.

*derived from any other source than the insurer be considered in such determination"* (emphasis added).

The crux of this case is whether the settlement payments received by the claimant must by law be considered in the self-support analysis under § 31, or whether the payments are exempt from such an analysis by the exclusionary language of § 38.

After a hearing, an administrative judge decided that the settlement payments ought not be considered in determining whether the claimant was fully self-supporting. The reviewing board of the department agreed, rejecting the employer's argument that the loss of consortium benefits represented a double recovery "for the same injury or incapacity," see *Mizrahi's Case*, 320 Mass. 733, 737 (1947), and concluding that the claimant's claim for loss of consortium stood independent of, and differed in kind from, the employee's injury. The employer appealed from the reviewing board's decision. A single justice of this court ruled the settlement payments must be accounted for in determining whether the claimant was in fact fully self-supporting.

Before addressing the merits, we summarize the facts found by the administrative judge and adopted by the reviewing board, with some amplification from aspects of the administrative record that are not otherwise challenged by the parties.

1. *Facts and procedural history.* On October 1, 1985, while working at his job with the employer, James Wilson suffered injuries that incapacitated him so that he was unable to return to work. Thereafter, the claimant pressed a loss of consortium claim against the employer, based on this workplace incident.[2] The claim was settled by the parties in 1993. The settlement was structured to provide the claimant with an initial payment of $100,000 (presumably on closing the settlement); monthly annuity payments of $2,000 thereafter for the duration of her life; and a $25,000 payment every five years from the date of

---

[2]A cause of action for loss of consortium is no longer available to the spouse of an injured employee covered by a workers' compensation plan, see St. 1985, c. 572, § 35, amending G. L. c. 152, § 24, unless the employee has preserved his or her right of action at common law. See *Powell* v. *Cole-Hersee Co.*, 26 Mass. App. Ct. 532, 533 & n.1 (1988).

settlement (the first of which was paid in 1998 and the second in 2003). All payments have in fact been made in accordance with the terms of that agreement.[3]

At a hearing on February 4, 2003, before an administrative judge (see G. L. c. 152, § 11), on her claim for continuing death benefits, the claimant described her living expenses, which, as of that date, totaled $2,606 per month.[4] The claimant also testified that she had paid for her daughter's wedding, and had made a gift of $26,000 to her adult daughter as well as $5,000 to her adult son. At the time she lived alone and had no dependents. She continued to own the parcel of land in Springfield on which her home had been located before it was destroyed by fire in 1989; a barn remained on the property. She also owned two other lots, the particulars of which were not otherwise described. She did not receive a salary or other wages, nor did she receive any social security benefits.[5]

The administrative judge concluded the settlement payments were "benefits" pursuant to § 38, and thus exempt from the self-support analysis under § 31. The administrative judge went on to comment further, opining that even if the settlement payments and monthly pension were considered, the claimant's monthly combined income would still be short of her monthly expenses. The administrative judge did not account for the $25,000 balloon payments, or the initial $100,000 payment; nor did he offer a reason for not doing so.

---

[3]The settlement also provided for a $100,000 payment on condition that the claimant reach the age of eighty. At the time of the administrative hearing she was fifty-four years of age.

[4]The total monthly expenses were comprised of rent, food, utilities, real estate taxes, excise tax and insurance for two motor vehicles, clothing expense, cable television, and costs ($400) she incurred for her hobby of making quilts for charitable concerns or family members. Because some were annual costs, those particular items were amortized to yield a monthly expense figure.

[5]Apart from the settlement payments, the claimant identified two other sources of income: a monthly pension from the employer and a life insurance policy on her husband. The employer conceded that, pursuant to § 38, both of these sources (pension and insurance) were excludable from the determination whether the claimant is fully self-supporting. (The monthly pension check amounts to approximately $470, net after deductions for health insurance and applicable taxes.)

Before the reviewing board, the employer argued that (1) the settlement payments fall outside the scope of any exclusion under § 38; (2) allowance of both the tort settlement and continuing § 31 benefits would constitute a "double recovery"; and (3) the initial $100,000 payment and the two $25,000 balloon payments must be prorated in determining the claimant's income: the $25,000 payments over five years each (as they were paid in five-year intervals), and the $100,000 over ten years (from 1993, when the claimant received the lump sum payment, to 2003, when the hearing was held regarding her entitlement to continuing benefits).[6] As proposed by the employer, this would yield a total monthly income of $3,250, an amount in excess of the agreed-to monthly living expenses.[7]

The reviewing board rejected the "double recovery" argument,[8] and did not address the proration argument because in its view, pursuant to §§ 31 and 38, none of the settlement payments was required to be considered in determining whether the claimant was fully self-supporting and entitled to continuing death benefits. From this decision of the board, the employer appealed to this court.

2. *Discussion.* a. *Standard of review.* We review the decision of the reviewing board pursuant to G. L. c. 30A, § 14(7)(*a*)-(*d*), (*f*)-(*g*). See *Robinson's Case*, 416 Mass. 454, 457 (1993). Interpretation of a statute by the administrative agency charged with primary responsibility for administering it is entitled to

---

[6]We note that, if the $100,000 payment were prorated in the same way as the $25,000 five-year payments, the $100,000 would be prorated over thirty-five years: the claimant was forty-five years old when she received the first $100,000, and will not receive the next $100,000 until her eightieth birthday.

[7]The employer's proposed calculation of the claimant's monthly income from the settlement is as follows:

$2,000 monthly annuity payments
  417 ($25,000 prorated over five years)
  833 ($100,000 prorated over ten years; see note 6, *supra*)
$3,250 per month

[8]The weekly § 31 benefits amount to approximately $361. Before the reviewing board, the claimant asserted that the loss she sustained, upon which she based her tort claim, was distinct from the harm suffered by her husband. She argued the settlement payments were compensatory for her own individual and distinct loss, and thus, could not be characterized in any way as a "double recovery" for the compensable workplace accident. We agree and take up this point in part (c) of our opinion, *infra*.

substantial deference. No such deference is owed however, when the agency's decision is marred by legal error.[9] See *Kszepka's Case*, 408 Mass. 843, 847 (1990).

The claimant had the burden of establishing entitlement to continuing benefits under the Act. See *Derinza's Case*, 229 Mass. 435, 447 (1918). We conclude that the pertinent language set forth in §§ 31 and 38, read in harmony with the over-all design of the Act, points to only one reasonable conclusion: payments received by the claimant from settling her loss of consortium claim must be considered as income to her for the purpose of deciding whether she was or was not in fact fully self-supporting. We reach this conclusion mindful of settled principles guiding our interpretation of the express provisions of the Act, to which we now turn.

b. *Section 31 continuing benefits.* Section 31 provides in pertinent part: "after a dependent unremarried widow . . . has received the maximum payments, . . . she *shall continue to receive further payments but only during such periods as . . . she is in fact not fully self-supporting*" (emphasis supplied). This provision was added by a legislative amendment in 1948. See St. 1948, c. 666. Though there were then various proposals under consideration by the Legislature, including 1948 Senate No. 228, a bill that would have provided death benefits for the life of a surviving widow without a showing of any need, the Legislature decided on the above quoted language, balancing the desire to increase death benefits with a concern that the competitiveness of Massachusetts businesses not be impaired.

Section 38 categorizes the types of benefits or monies that shall be excluded from the "self-supporting" analysis under § 31. The legislative policy advanced by § 38 was discussed by the Supreme Judicial Court in *Mizrahi's Case*, 320 Mass. 733 (1947). The court explained that "benefits," as used in § 38, was a term of art that referred to "any sick benefits or other benefits to which [the employee or dependent] might be

---

[9]No special deference is afforded the decision of the single justice. We review the same as if it had been issued by the trial court. See *Carey's Case*, 66 Mass. App. Ct. 749, 751 (2006).

entitled from such sources as fraternal orders, benefit associations, pension plans governmental or otherwise, and the like." *Id.* at 737. "In that field [i.e., the realm of sick benefits, pensions, and other benefits from membership associations] it [§ 38] should be broadly construed." *Ibid.*

The court in *Mizrahi's Case* stated that § 38 was "designed to make sure that the employee [or a dependent standing in the employee's shoes] would not lose the full advantage of any savings or insurance of his [or her] own," or of "benefits" to which the employee was entitled based on his or her employment or organizational membership. *Ibid.* That concern is not present here.

The settlement payments are not savings or insurance. Nor can the settlement payments be characterized as "benefits" due the claimant as a result of her husband's employment or membership in an organization. Payments derived from a tort settlement (or judgment) are not the product of a benefit scheme to which the employee (or claimant) contributed. Nor is such a settlement equivalent to a "private arrangement" with the employer, see *Gould's Case*, 355 Mass. 66, 71 (1968), that could potentially be excluded from consideration of the claimant's income pursuant to § 38.[10] We believe an effort to construe § 38 to encompass the settlement payments here would do violence to the provisions of the statute and run counter to the design of the Act as a whole.

c. *Alleged double recovery.* We agree that the settlement payments here, based as they are on the claimant's loss of consortium claim, are related to the claimant's own independent

---

[10]In concluding that the settlement payments should not be included in determining whether the claimant is self-supporting, the reviewing board reasoned that the settlement payments could be considered a "private arrangement not approved by the board," *Gould's Case*, 355 Mass. at 72, and therefore could not be included in determining the claimant's § 31 statutory rights. We note, however, that, subsequent to *Gould's Case*, the Legislature amended G. L. c. 152 by adding § 46A to allow an offset for just such arrangements. See St. 1974, c. 812, § 1 (most recently amended by St. 1998, c. 463, § 119). Moreover, the settlement here was not in the nature of a contractual employment benefit as in *Gould's Case*. Rather, the settlement was made in the context of a tort claim — a realm that has long been open to consideration under the Act. Compare G. L. c. 152, § 15.

loss stemming from the workplace incident. As such, the settlement payments are not subject to a lien by the employer, and G. L. c. 152, § 15, which is designed to guard against double recovery by an employee or dependent, does not apply. See *Eisner* v. *Hertz Corp.*, 381 Mass. 127, 133-134 (1980); *Hultin* v. *Francis Harvey & Sons, Inc.*, 40 Mass. App. Ct. 692, 695 (1996). Sections 15 and 31 serve different purposes, however.

Section 31's command that a surviving spouse may only receive continuing death benefits during periods when she "is in fact not fully self-supporting" is wholly concerned with ensuring that such benefits are provided to those truly in need. That has nothing to do with the legislative concern expressed in § 15 that an employee should not receive a windfall by way of recovery in a third-party action attendant to the underlying compensable workplace accident. The reviewing board's effort to analogize the two legislative aims in rationalizing its decision not to consider the settlement payments under § 31 was misplaced.

Even though we believe the legislative language "fully self-supporting" in § 31 does not entirely contemplate a common sense meaning of the phrase, given the gloss added by § 38, we have no doubt the Legislature did not intend to provide for continuing benefits without a showing of need by a claimant. If a claimant's income stream provides for her own support and reasonable living expenses, without aid from others, then it must follow (if the qualifying phrase in § 31 is to have meaning) that the claimant is in fact fully self-supporting.

3. *Conclusion.* For the reasons stated above, we conclude that, in determining whether a surviving dependent is "in fact not fully self-supporting" pursuant to G. L. c. 152, § 31, damages paid pursuant to a suit for lack of consortium are not excludable income pursuant to § 38. Thus, in the instant matter, the $2,000 monthly payment made pursuant to the settlement is properly included in determining the claimant's income under § 31. However, this falls short of the claimant's $2,606 in monthly expenses. We therefore vacate the judgment and remand the matter to the reviewing board for a determination as to how the $25,000 balloon payments and the $100,000 initial

lump sum payment shall be factored in the determination of the claimant's monthly income.[11]

*So ordered.*

---

[11]The reviewing board may make the determination on its own or remand the matter to an administrative judge in the event it concludes that further fact-finding is required. For example, the record does not indicate whether the claimant's attorney's fees were taken out of the initial lump sum payment, and, if so, whether such funds may be considered in determining whether the claimant is *"in fact . . .* fully self-supporting" (emphasis supplied).

In addition, the reviewing board did not address the employer's proposal for prorating the lump sum payments (see notes 6-7, *supra*), as the board excluded all settlement payments from consideration. We note that § 31 anticipates that continuing death benefit payments may stop and start over the years, depending upon a claimant's income: Continuing payments are provided

> *"only during such periods* as [a claimant] is in fact not fully self-supporting[,]" and "[e]ither party may request hearings at reasonable intervals before a board member on the question of granting such payments, or on the question of restoration of such payments or on the question of discontinuance of such payments" (emphasis supplied).

G. L. c. 152, § 31. Given this language, it is possible that the board may conclude that the claimant's income should be viewed discretely in each year, with no proration, and that benefits should be continued and discontinued as her income rises and falls. Alternatively, the board may conclude that the income should be prorated in some way. Whether or how to prorate the lump sum and balloon payments is for the department, and not this court, to determine in the first instance. Cf. *Work-A-Day of Fitchburg, Inc.* v. *Commissioner of the Dept. of Employment & Training*, 412 Mass. 578, 581 (1992).