**AMERICAN EMPLOYERS INS. CO. v. CLIMER.**

**No. 14014.**

Court of Civil Appeals of Texas. Dallas.
April 22, 1949.

Rehearing Denied May 20, 1949.

R. T. Bailey, of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

CRAMER, Justice.

This proceeding under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., grew out of an alleged accidental injury to appellee December 7, 1946, while employed by Super-Cold Southwest Company. The jury, on appeal to the District Court, found: (1) That appellee sustained accidental personal injury to his left hand December 7, 1946, while working in the course of his employment for Super-Cold Southwest Company; (2) resulting in total loss of use of his left hand; (3) for six months, and (5) after such six months period; (7) 75% partial loss of the use of his left hand; (6) for the rest of his life; (8) that he sustained total loss of the use of the left third or ring finger; (9) for the rest of his life; (14) that he sustained total loss of the use of his left little finger; (15) for the rest of his life; (20) that such injuries extended to or affected his entire left third or ring finger; (21) and his entire left little finger; (22) that plaintiff's injuries

extended to or affected his left hand; (23) that the injury or the effects thereof were not confined to the third joint or distal phalange of such finger; (25) nor to the loss of the use of the little finger and the ring finger of his left hand.

From the judgment setting aside the award of the Board and awarding compensation on such verdict, this appeal has been perfected. Appellant assigns seven points of error. The first complains of the trial court's refusal to abate this action until the Texas Employment Commission (who had paid unemployment compensation to the employee after the injury) could be made a party to this suit. The Commission was neither a necessary nor a proper party to this suit; it could not recover any part of the compensation due appellee; it was not assignable. Art. 8306, sec. 3, R.C.S. The statements he made to the Commission were properly admitted in evidence for such value, for impeachment purposes, as the jury might see fit to give them. The first point of error is therefore overruled.

In points two and three, appellant says that the jury's finding of injury and incapacity to the left hand was against the great preponderance of the evidence; was not supported by proof, and the court erred in basing its judgment on the theory that the injury to the third or distal phalange extended to or affected the left hand; and, further, that such findings are not supported by the pleadings. Appellee in his original petition alleged total loss of the use of his left hand for a period of 150 weeks (Tr. 95) and in his trial amendment he alleges the total and permanent loss of use of the little finger and also the third or ring finger on his left hand, as well as the total loss of the use of his left hand (Tr. 10). Defendant answered by general denial "that the incapacity, if any, of plaintiff was not produced by the accidental personal injuries in the course of his employment with Super-Cold Southwest Company, but that same was due solely to disease or to injuries sustained at other times and other places, than on December 7, 1946." And that the incapacity, if any, "was of a

minor nature and has long since ceased and terminated, and that same was not total but merely partial." We overrule the attack on the pleadings. The pleading of total loss of the use of the hand included the hand and the fingers, without separate pleading as to fingers. "The allegation of the greater injury permits recovery for the lesser." Traders & General Ins. Co. v. Snow, Tex.Civ.App., 114 S.W.2d 682, Syl. 7 (error refused); Southern Underwriters v. Boswell, 138 Tex. 255, 158 S. W.2d 280; see also Patterson v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 188 S.W.2d 778.

The evidence on the issue of loss of use of the hand most favorable to appellee is substantially as follows: Dr. Schalck testified that on his examination of appellee, March 21, 1947, he found the ring finger and the last finger on the hand fractured in the terminal phalange and the pathology that usually follows such injuries—swelling, hardening, induration and a certain degree of disability (S.F. 13); that he saw appellee six times after that; he took a fluoroscopic view of his hand and re-examined him last during the week before the trial; that he found then the permanent impairment of the ability of the terminal joints of the two fingers—and the next one the same way; it was not possible for appellee to close his left hand up completely with respect to those fingers; he could close it about half; he attributed appellee's inability to close his hand to a permanent interference of the joint itself because of a misplaced fracture which makes it painful, especially when he uses it (S.F. 15). That impairment in the hand itself is had whenever there is injury in any terminal extremity; then there is soft tissue to swell, as well as bone tissue, and whenever there is any traumatic injury at all, swelling takes place and scar tissue forms; and when that scar tissue clamps down on nerves close by, it will set up reflexes that will not easily be eradicated because the cause of the reflex is constantly there. There is always an irritation to the nerve there and wherever that nerve goes, it is likely to carry some degree of pain whenever there is any stretching put on those nerves or to that particular

area (S.F. 16); that such condition is permanent. In the doctor's opinion appellee could not use either of the two fingers mentioned in the performance of labor without suffering pain in his fingers and in his hand (S.F. 16–17); the claimant had had trouble with his other fingers years before, which he told the doctor about, but which was not included in the report, because it had nothing to do with it. (S.F. 20). Pain in the upper part of his hand is due to the pain impulses ·that are transmitted to his brain, that is, toward his spinal cord, and it reaches up to the hand and includes the hand; that is the pain that is there now (S.F. 38). The doctor further testified: "There is no inflammation there now. But in any kind of an injury there is an inflammation to start with. That inflammatory pain is that acute pain, when you cut yourself it hurts—well, that is called the acute inflammatory pain. That passes away, but if you cut any vital structures there and then after the inflammatory pain is out of the way, the supervening pain, the pain that continues afterwards, that is not inflammatory pain, but it is reflex pain— traumatic pain." (S.F. 39). Appellee himself testified that his hand seemed to be dead when he brought it out from between the steel trash barrels, but in a little while it begain to turn black and swell (S.F. 48); when he uses his hand it is just like knives "sticking through" the palm of his hand (S.F. 50); he has not worked since he left Super-Cold's employment (S.F. 50).

▮ The testimony raises the issue of injury to, and loss of the use of, the left hand in the usual tasks of a working man. The rule is that to allow a recovery for the loss of the use of a hand, as distinguished from the fingers, the injury (that is, the damage or harm to the physical structure, and such diseases and infections as naturally result therefrom) must extend to the hand above the fingers and affect the hand proper (that is, cause a percentage of the loss of the use of the hand above the fingers) other than and in addition to that resulting from the loss of use, if any, of the fingers.

▮ There being evidence to sustain the jury's findings, these points of error are overruled.

In its fourth point appellant complains of error in refusing its requested issue inquiring whether a previous injury to appellee's index finger of his left hand had not contributed to the present incapacity to his left hand. Appellee Climer demonstrated his hand to the jury and testified that, before the injury involved here, he hurt his forefinger; that the forefinger was not hurt in this accident; he is not claiming that the blue nail on the index finger and the thumb happened in this accident. Dr. Schalck testified that he couldn't find anything wrong with the other two fingers and thumb that was related to the injury here; he did not include it in his report, because it had nothing to do with it.

▮▮ If this evidence raises the question as to whether or not a prior compensable injury contributed to or increased the incapacity claimed, the burden is on claimant to show that it did not contribute in any degree to the incapacity or loss of use claimed as a basis for recovery in the present proceeding. Texas Employers Ins. Ass'n v. Van Pelt, Tex.Civ.App., 68 S.W.2d 514; Williamson·v. Texas Indemnity Ins. Co., 127 Tex. 71, 90 S.W.2d 1088; Traders & General Ins. Co. v. Watson, Tex.Civ. App., 131 S.W.2d 1103; Petroleum Casualty Co. v. Bristow, Tex.Civ.App., 21 S.W.2d 9; Hartford Accident & Indemnity Co. v. Leigh, Tex.Civ.App., 57 S.W.2d 605; Art. 8306, sec. 12c, R.C.S.1925. The material question here, therefore, is whether the evidence raised the issue. A co-employee of plaintiff testified that he had never noticed any stiffness, or ever seen plaintiff favoring his left hand. The only effect of the prior injury was the blue nails. The evidence in our opinion does not raise the issue of a prior compensable injury. Texas Indemnity Ins. Co. v. Arant, Tex.Civ.App., 171 S.W.2d 915, writ ref. w. m.; also, Casualty Reciprocal Exchange v. Dawson, Tex. Civ.App., 81 S.W.2d 284, writ dism. 130 Tex. 362, 107 S.W.2d 994; Texas Indemnity Co. v. McNew, Tex.Civ.App., 90 S.W.2d 1115 (error dism.).

Appellant in its fifth and sixth points complains of the court's refusal to submit to the jury its requested issues, 1 and 2, inquiring, separately, whether the injury to the little finger, the ring finger, was not confined to the third joint or distal phalange of such finger, These issues are substantially submitted in the court's issues numbered 23 and 24, and there was no error in refusing to submit them again. Texas Rules of Civil Procedure, Rule 279; Texas Employers Ins. Ass'n v. McKay, 146 Tex. 569, 210 S.W.2d 147.

By its seventh and last point, appellant complains that the excessiveness of the verdict is so against the great weight of the testimony as to shock the conscience of the court. In considering this assignment we have viewed the whole record and are unwilling to say the verdict is so out of line that we should reverse the judgment.

Finding no reversible error, the judgment of the trial court is affirmed.