372 P.2d 381

Gordon Norwood WINTER, Claimant, Plaintiff-Appellee,

v.

ROBERSON CONSTRUCTION COMPANY, Employer, and Pacific Employers Insurance Company, Insurer, Defendants-Appellants.

No. 7029.

Supreme Court of New Mexico.

June 7, 1962.

Key, Cohen & May, Albuquerque, for appellants.

Sheehan, Duhigg & Christensen, Albuquerque, for appellee.

COMPTON, Chief Justice.

This is an appeal from a judgment awarding workmen's compensation benefits to Gordon Norwood Winter, appellee herein, for a twenty-five percent (25%) partial permanent disability, based upon

findings of the trial court that he suffered injury by accident arising out of and in the course of his employment with appellant, Roberson Construction Company, on or about February 25, 1960. The complaint alleged that the injury consisted of a chipping of a bone in the claimant's right shoulder, but the injury found was a strain of his right arm resulting in a tearing of the tendons in that arm. At the close of the trial, however, a motion by appellee to amend the complaint to conform to the evidence was granted.

The record discloses that Mr. Winter was a construction worker and plasterer about 63 years of age at the time of the alleged injury. He was employed by appellant Roberson Construction Company as a call-back worker or repair man at a weekly wage of at least $100.00. He had been with the company nearly two years. He testified that on or about February 25, 1960 he was injured while using a jack in an attempt to raise the floor of the house in which he was working. Claimant was working in two feet of space under the floor of the house and his testimony as to how the injury occurred is as follows:

"Well, the floor had settled and I was under there with this jack trying to raise it, and as you raise, this way (indicating), it becomes heavier, of course, as you go up it becomes heavier, and we were necessarily required to use a smaller, short handle because of the limited space, and that required quite a bit of strength to raise this up after we got to a certain point, and at times it was impossible to move it with a direct pull, you had to jerk it, and that is when I felt this sudden pain in my shoulder when I made a terrific jerk to get this thing started again."

The claimant continued to work the rest of that day but the following day, because of severe pain, went to Mr. Barnes, his supervisor, and told him that he would like to go to a doctor as he believed he had twisted his shoulder. Mr. Barnes thereupon gave him a "Medical Introduction Slip," dated February 26, 1960, directed to Drs. Sharpe or Harbin, which reads:

"The bearer Gordon Winter is alleged to have been injured on Feb. 23, '60 while in our employ and is being referred to you in pursuance, and subject to the limitations, of the Workmen's Compensation Law. Please report to and obtain instructions from our insurer, Pacific Employers Insurance Co."

The medical slip was signed "Roberson Constr. Co." Also, after the injury he was called in the office of Mr. Roberson's secretary to give a more detailed report of the injury, which report appears to have been misplaced.

The claimant went to Dr. Harbin, a general practitioner on February 27, 1960, stating that his painful arm and shoulder had come about as a result of vigorously using a hand jack while elevating a house. He was examined and put through various motions to ascertain any limitations of motion in the right upper extremity. No objective symptoms were found. Dr. Harbin told claimant that he had a bursitis-like condition, gave him diathermy treatment and muscle relaxant medication, and told him to return the following day unless he showed marked improvement. Claimant did not return to Dr. Harbin until May 23rd at which time he complained of recurrence of pain. X-rays were taken. He received treatments on May 23rd and 24th and at that time Dr. Harbin did not think he was disabled, although he told claimant he would have some difficulty with his shoulder at times; his diagnosis was acute fatigue of a muscle group which claimant had used too vigorously; that it was not a permanent condition but could be cured by rest, exercise and simple conservative treatment.

Claimant continued to work for appellant employer from the date of the alleged injury without missing a day and without a decrease in wages, until June 3, 1960 when he was laid off. Subsequent to being laid off he was unable to continue painting and plastering work without severe pain and tried selling real estate. His earnings from June 3, 1960 to January 1, 1961 were $706.88. During this latter period he applied for and received unemployment compensation.

On September 9, 1960, claimant went to Dr. Waldo Hanns, an orthopedic physician, complaining of pain in and about the right shoulder, relating to him the injury and the history of pain since its occurrence. Dr. Hanns treated claimant for several weeks and again in January, 1961. He found no objective symptoms. The diagnosis by Dr. Hanns was bicepital tendonitis, subdeltoid bursitis, or supersplenius tendonitis. The X-rays taken by Dr. Hanns, as well as those taken by Dr. Harbin, were consistent with the diagnosis. Dr. Harbin defined tendonitis as "an inflamatory process which is an acute process brought on by infection or trauma . . . ." Dr. Hanns testified that tendonitis is not always symptomatic; that it is seen in people who give no history of trauma with the onset of their difficulty, but that since claimant dates his onset of symptoms with the injury he believes that the trauma or strain was the precipitating factor here, and that it is both probable and possible that his onset of symptoms dated from the traumatic motions he had described. Dr. Hanns considered the claimant totally disabled for heavy work, and disabled to a lesser degree for lighter activities.

■ The court found that the appellants had actual knowledge of a compensable injury; that the claimant suffered injury by accident arising out of and in the course of his employment on February 25, 1960; that the injury was suffered while jacking up the floor of a house when he strained his right arm resulting in a tearing of the tendons in his arm which has resulted in pain at all times to a greater or lesser degree; and that as a result thereof he has a 25% partial permanent disability. Appellants contend that the findings are not supported by substantial evidence. This court is committed to the rule so often reiterated that it will not weigh the evidence, but will examine it to determine if the findings are supported by substantial evidence and, if so, they are conclusive and will not be set aside on appeal. Brown v. Martinez, 68 N.M. 271, 361 P.2d 152; Davis v. Hartley, 69 N.M. 91, 364 P.2d 349.

Appellants make much of the uncertainty in the claimant's testimony as to whether the alleged injury took place on February 23rd or 25th, 1960, and as to whether it occurred in a house on Shoshone Street or a house on Piermont Street. There is no evidence, however, that claimant was neither employed by appellants on both of these dates nor engaged in the performance of his duties at either of these houses. Nor was it disputed that he reported an injury to his foreman on February 26, 1960 and obtained written permission for medical attention for an alleged injury while in appellants' employ, or that he was called into appellant employer's office within 30 days from the alleged injury to give a detailed report thereof.

We find no merit in the contention that appellants had no actual knowledge of an alleged compensable injury—an injury arising out of and in the course of employment—in the face of the issuance of its medical order. The verbal communications between claimant and the employer's foreman, resulting in the issuance of the order, would lead to a strong inference that they amounted to more than the mere casual conversations which took place in the cases of Ogletree v. Jones, 44 N.M. 567, 106 P.2d 302 and Bolton v. Murdock, 62 N.M. 211, 307 P.2d 794, relied upon by appellants, and this inference must be considered in the light most favorable to appellee and resolved in his favor. Maryland Casualty Co. v. Jolly, 67 N.M. 101, 353 P.2d 1013; Davis v. Hartley, supra. The findings as to notice based on actual knowledge were supported by uncontradicted evidence and we fail to see how the trial court could have reached any other conclusion.

■ With respect to appellants' attacks on the findings of the trial court with respect to whether claimant actually suffered an injury by accident, and as to the causal

connection between the alleged injury suffered and the resulting disability, appellants rely heavily on the fact that the medical testimony was based entirely on subjective symptoms and not on objective findings which, they assert, amounts to surmise and speculation. That this reasoning is erroneous is borne out in Waller v. Shell Oil Co., 60 N.M. 484, 292 P.2d 782, wherein the claimant received an award of compensation for partial permanent disability when medical diagnoses of disability were based entirely on subjective symptoms.

■ In this case, there was conflict in the medical testimony, but whether there was an accident, whether it arose out of and in the course of the employment and whether it resulted in disability to the claimant were for the trier of the facts to determine, it being the sole judge of the weight of the evidence and the credibility of the witnesses. Dowaliby v. Fleming, 69 N.M. 60, 364 P.2d 126; Gilbert v. E. B. Law & Son, Inc., 60 N.M. 101, 287 P.2d 992. If the trial court gave more weight to the testimony of claimant than to that of appellants, or to the testimony of an orthopedic physician than to that of a general practitioner, the appellants' complaint on that score will avail them nothing here since we find that the testimony relating to the injury and to the medical probability of the causal connection is substantial and satisfies the requirement of § 59–10–13.3

(B) of the Workmen's Compensation Act. In view of the medical and other testimony that the claimant is totally disabled as far as heavy work is concerned and to a lesser degree for lighter activities, we find no error in the trial court's conclusion that as a result of his injury the claimant is partially disabled.

■ Appellants further contend that claimant is estopped to claim workmen's compensation for the reason that his earning ability was not decreased as the result of any alleged accident. It is true that the claimant continued to work for the same employer from the date of his injury until laid off on June 3, 1960, 3 and ½ months later, without missing time from work and without a decrease in wages.

Section 59–10–12.1(C), N.M.S.A.1953, as amended, defines partial disability as

"* * * a reduction in, but not an entire loss of, a workman's *wage earning ability* due to an injury suffered by accident arising out of and in the course of his employment." (Emphasis ours.)

The pertinent provisions of § 59–10–18.3 of the Workmen's Compensation Act, supra, which provide the method for computation of benefits for partial disability state:

"* * * For partial disability the workmen's compensation benefits * * * shall be that percentage of the benefit

payable for total disability \* \* \* which is derived by dividing the workman's average weekly wage before the disability into the difference between such average weekly wage before the disability and the average weekly wage *he earns or is able to earn after disability, in any employment*, which benefits shall be payable for the duration of the workman's partial disability but in no event longer than five hundred (500) weeks." (Emphasis ours.)

Under this latter section, it can readily be seen that a computation of benefits for partial disability to claimant here during the period he continued in the same employment at the same salary would be zero. But this is not conclusive. As shown by the evidence there was a reduction in the claimant's wage-earning ability, and consequently there was a partial disability as a result of his injury.

In the case before us the evidence is uncontradicted as to the following facts: that the claimant had been employed by appellants for nearly two years prior to the injury; that he remained on the job after the injury on medical advice he was not to let the arm stay idle; that from the date of the injury he suffered pain in his arm and shoulder; that he did as little of the hard work as possible, and that he received complaints from his superiors that he was not turning in enough work orders. After approximately 3½ months he was laid off. Appellants testified he was laid off because of lack of work, but the claimant's testimony, not contradicted, was that he in fact trained the man who replaced him. For whatever reason he was continued in his employment by appellants after his injury, the evidence supports the fact that when he was laid off, and for the ensuing months up to trial, he was unable to retain any employment requiring the use of his arms, the left arm having been previously incapacitated. There was no evidence of an injury subsequent to his employment with appellants. The facts, we think, afford substantial evidence to support the finding of the trial court.

Appellants' next contention is that the claimant is estopped to claim compensation for the reason that he waived same when he applied for and received unemployment compensation. The basis for this contention is that in applying for and receiving unemployment compensation he stated under oath that he was ready, willing and able to work which is inconsistent with claimant's assertion now that he is unable to work. We do not find such an inconsistency. It is clear that while he was receiving unemployment compensation he was ready, willing and able to do some kind of work; nevertheless, the evidence is substantial that he is now disabled for the work he was doing while employed by appellant employer. The only case relied upon by appellants dealing directly with

this point is Stubbs v. C. F. Wheeler Builders (D.C.A.Fla.), 106 So.2d 104, wherein the Industrial Commission was charged with administering both the Workmen's Compensation Act and the Unemployment Compensaation Act. The claimant in that case was drawing unemployment compensation during a portion of the time for which the Commission had ordered the carrier to pay him for temporary total disability. The claimant's assertion that he was *totally disabled for work* was found to be inconsistent with his drawing unemployment compensation upon the basis that he was ready, willing and able to work. That is not true of the case under consideration.

This is a question of first impression in this court. We have examined the authorities and texts dealing with the problem of the inconsistency between accepting compensation for wage-loss attributable to physical disability under workmen's compensation laws and at the same time accepting compensation for wage-loss attributable to economic causation under unemployment compensation laws. While the majority of unemployment compensation statutes now specifically forbid benefits to anyone drawing workmen's compensation, workmen's compensation laws usually contain no such specific provision. Compensation laws often state that benefits from any other source should not be used to reduce the amounts payable as compensation.

2 Larson Workmen's Compensation Law, § 97.20. In the very recent case of Edwards v. Metro Tile Company, 133 So.2d 411, the Supreme Court of Florida, the same state from which appellants cited their authority, held in a situation where the claimant had applied for and received unemployment compensation while receiving workmen's compensation for temporary total disability, as follows:

"* * * There might appear to be some inconsistency between the simultaneous acceptance of unemployment compensation benefits and workmen's compensation. However, the authorities generally agree that the apparent inconsistency disappears when we take into consideration the objectives to be accomplished by the two types of protection. A claimant for workmen's compensation is expected to make a reasonable effort to secure employment. The fact that he is not able to obtain a job during the period of alleged disability will not preclude him from receiving the benefits of both types of protection. A claimant may honestly represent to the unemployment compensation agency that he is able to do some work if a job is made available to him. At the same time, with equal honesty, he might properly represent to the workmen's compensation agency that he was totally disabled during the same period because

no one would give him a job in his then physical condition. * * * The rule is otherwise where a statute specifically precludes an award of workmen's compensation benefits to the recipient of unemployment compensation allowances. * * *"

See 2 Larson Workmen's Compensation Law, § 57.65 and Osterlund v. State, 135 Conn. 498, 66 A.2d 363. We find this reasoning to be equally applicable to those cases in which the claimant first applied for and received unemployment compensation and thereafter sought workmen's compensation. Crane Enamel Co. v. Jamison, 188 Tenn. 211, 217 S.W.2d 945; American Employers Ins. Co. v. Climer, Tex.Civ. App., 220 S.W.2d 697; Henry v. Ford Motor Co., 291 Mich. 535, 289 N.W. 244.

It is interesting to note in this connection that § 59–9–5 of the New Mexico Unemployment Compensation Law dealing with disqualification of benefits, prior to being amended in 1939, forbade benefits to anyone drawing workmen's compensation, but that the present act does not contain such a provision.

In the absence of any provisions in our statutes forbidding the receipt of both unemployment compensation and workmen's compensation for the same period, we find no error in the award of compensation by the trial court

The final contention of appellants is that the court erred in allowing testimony regarding an injury to the claimant different from that alleged in the complaint. The complaint alleged an injury "consisting of a chipping of a bone" in claimant's right shoulder which appears to have been the claimant's understanding until the trial. The evidence developed a tearing of the tendons in the arm.

Under § 21–1–1(15) (b), N.M.S.A.1953, specifically made applicable to workmen's compensation cases arising on and after July 1, 1959, the trial court is given wide discretion in its allowance of amendments to conform to the evidence. A portion of this section states:

"* * * If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. * * *"

This court will not set aside a ruling of the trial court where there is no abuse of discretion. Hoover v. City of Albuquerque, 58 N.M. 250, 270 P.2d 386. In the absence of an attempt by the appellants

below to show that they were prejudiced in maintaining their defense on the merits, we find no abuse of discretion by the trial court in allowing the testimony of claimant's actual injury, or in allowing claimant's motion to amend his pleadings to conform to the evidence.

The judgment below should be affirmed with an additional award to appellee of $750.00 for the services of his attorneys in representing him in this court.

IT IS SO ORDERED.

CHAVEZ and MOISE, JJ., concur.

CARMODY and NOBLE, JJ., not participating.