**Sally COLE, Respondent,**

v.

**ARMOUR & COMPANY (Self-insured), Relator.**

**No. 47070.**

Supreme Court of Minnesota.

Aug. 19, 1977.

Mahoney Dougherty & Mahoney, Richard P. Mahoney and Kenneth P. Gleason, Minneapolis, for relator.

Thomas R. Longfellow, Worker's Compensation Division, St. Paul, for respondent.

Heard before SHERAN, C. J., and PETERSON and TODD, JJ., and considered and decided by the court en banc.

TODD, Justice.

Sally Cole was injured while employed by Armour & Company. She sought and was granted early disability retirement by Armour. Thereafter, she was awarded worker's compensation benefits, with the award of benefits reduced in an amount equal to the pension benefits already paid and being paid to her by Armour. The Worker's Compensation Court of Appeals, reversing the compensation judge, unanimously refused to allow Armour to deduct retirement benefits from the compensation award. Neither the statute nor the union agreement specifically provided for such deduction. We affirm.

■ We need not recite the facts which preceded the allowance of early retirement and the award of compensation benefits since they are not in dispute and do not affect the legal issue presented. The precise question here is whether pension benefits can be deducted from a compensation award absent statutory or contractual language included in a union agreement permitting such a deduction.

The parties are in agreement that the statute does not permit such a deduction. Therefore, the issue becomes whether such a deduction should be made under the terms of the union agreement with Armour which establishes Sally Cole's rights to early disability retirement.

Article II, section 3, of the retirement plan agreed to between Armour and the union enumerates the requirements that an employee must satisfy to qualify for a disability pension:

"Total and Permanent Disability Retirement.

"(a) An employee with at least 10 years of credited service who becomes permanently and totally disabled subsequent to the Effective Date and prior to attaining age 65 shall be eligible for a disability pension as hereinafter provided.

"(b) An employee shall be deemed to be totally and permanently disabled when, on the basis of medical evidence satisfactory to the Company, he is disabled to the extent that he is unable to perform the duties of any position to which his seniority entitles him.

"(c) The monthly pension payable to such a totally and permanently disabled Employee shall be $12.00 a month for each of his years of credited service to disability retirement effective January 1, 1971, for the Employee who becomes disabled in the calendar year 1971 and shall be $13.00 effective January 1, 1972, for those who become disabled in 1972 or thereafter; such monthly amount shall be payable during the Employee's continuing disability until he reaches age 65; provided, however, that commencing with the month as of which the Employee either becomes entitled to receive a disability pension under the Federal Social Security Act or reaches age 65, and for life thereafter, the monthly disability pension payable hereunder shall be equal to $6.00 a month effective January 1, 1971, for the Employee who becomes eligible for a disability pension in the calendar year 1971 and shall be $6.50 effective January 1, 1972, for those who become so eligible in 1972 or thereafter for each of the Employee's years of credited service to the date of his disability retirement hereunder.

"(d) Any disability Pensioner may be required to submit to medical examination at any time during retirement prior to age 65, but not more often than semi-annually, to determine whether he is eligible for continuance of the disability pension. If, on the basis of such examination, it is found that he is no longer disabled as defined in (b) above, his disability pension will cease. In the event the disability Pensioner refuses to submit to medical examination, his pension will be discontinued until he submits to such examination.

"(e) An Employee who, having been retired on a permanent and total disability pension, recovers and is then re-employed by the Company, shall have his credited service at the time of disability reinstated, and shall, in respect of service after such re-employment, accumulate credited service for his subsequent retirement."

It is undisputed that Sally Cole satisfies all the particular qualifications in order to be eligible for an early disability retirement. Section 3(c) above provides for a reduction of pension benefits upon the receipt of social security payments. Conspicuous by its absence in this section is any reference to a reduction of pension benefits for worker's compensation benefits received by the employee. The failure of the union agreement to specifically provide for such a deduction was the basis of the Worker's Compensation Court of Appeals' decision to deny Armour a reduction.

Armour argues that we should consider the contract as a whole and give effect to the intention of the parties when entering the agreement; that pension benefits should be deducted from worker's compensation payments. However, the plain language of the agreement illustrates that the parties were aware of the potential problem that could occur when worker's compensation benefits are being received by an employee. Appendix G, Part I, Section A(b) of the Supplemental Agreement specifically precludes payment of hospitalization benefits to employees receiving compensation benefits. In addition, Article XVII, Section 17.1 of the Master Agreement provides that sick pay will not be paid to qualified employees if they are receiving worker's compensation benefits at the same time.

Thus, it is clear that the parties were aware of the problems that can occur when a worker becomes entitled to worker's compensation benefits as well as benefits under the agreement. Armour cites two cases in which this court allowed a credit against an award of worker's compensation benefits to an employee to support its argument of allowing a deduction in the instant case. See, *Repo v. Capitol Elevator Company*, Minn., 252 N.W.2d 248 (1977); *Lemmer v. Batzli Electric Co.*, 267 Minn. 8, 125 N.W.2d 434 (1963). However, in each of those cases, an insurer paid benefits under a policy which excluded injuries covered by worker's compensation. Upon a later determination that worker's compensation benefits were payable, the insurer was allowed reimbursement, from the worker's compensation benefits, of the payments made to which the employee was not entitled and which he used in lieu of compensation. In this case, there is no provision in the agreement which prevents the payment of a disability pension if worker's compensation benefits are payable. Thus, these two cases are distinguishable and of little assistance in the present case. Armour could have negotiated for the inclusion of language in the agreement providing for a reduction in disability pension benefits in the amount of worker's compensation benefits paid to the employee. However, the time to include such a provision is when the agreement is being negotiated, not several years after its effective date. The Worker's Compensation Court of Appeals was correct in its decision to not read a deduction into the agreement when the parties to the agreement had not so provided.

Affirmed.