727 P.2d 956

**Geraldine CARTER, Plaintiff-Appellant,**

**v.**

**MOUNTAIN BELL, Employer and Insurer, Defendant-Appellee.**

**No. 8738.**

Court of Appeals of New Mexico.

Oct. 7, 1986.

Randi McGinn, Albuquerque, for plaintiff-appellant.

H. Perry Ryon, Mountain States Tel. & Tel. Co., Albuquerque, for defendant-appellee.

## OPINION

ALARID, Judge.

Plaintiff Geraldine Carter appeals from a judgment awarding her compensation for a scheduled injury, and crediting defendant Mountain Bell with payments previously made to plaintiff under defendant's benefits plans. On appeal, plaintiff raises two issues. She first challenges the trial court's decision to give defendant credit. She next alleges that she should have been found to be totally disabled or, at least, to have suffered a separate and distinct impairment to the body as a whole, thereby allowing her to recover benefits for partial disability. The facts necessary for our discussion will be discussed as we analyze the legal issues raised by plaintiff in her appeal. We affirm the trial court on the credit issue and remand on the issue of scheduled versus non-scheduled injury.

## DISCUSSION

**I. Whether the trial court erred in granting defendant credit against worker's compensation benefits for monies paid under its accident and disability plans.**

Defendant is self-insured. Since 1913, all Bell System companies have had benefit plans similar to the ones at issue in this case. *See Southwestern Bell Telephone Co. v. Siegler,* 240 Ark. 132, 398 S.W.2d 531 (1966).

Defendant has had a "Sickness and Accident Disability Benefit Plan." For sickness, defined as illness or off-the-job injury, the plan pays the employee full salary for a certain time, depending on the employee's longevity with the company, and then half-salary for the remainder of the time up to fifty-two weeks. Then, for sickness, the employee is eligible for benefits of half-salary for as long as the employee is disabled under another plan, the "Company's Long Term Disability Plan," administered by Mutual of Omaha. For accident defined as on-the-job accident, the "Sickness and Accident Disability Benefit Plan" pays the employee full salary for a certain time, again depending on the employee's longevity with the company, and then half-salary for as long as the employee remains disabled. Thus, the benefits are the same for sickness as for accident. The only difference is that for sickness, the long-term disability plan picks up the payments after one year, whereas, for accident, the "Sickness and Accident Disability Benefit Plan" pays all the benefits.

The sickness and accident plan provides that employees cannot get benefits for both sickness and accident at the same time. In addition:

> In case any benefit, which the Committee shall determine to be of the same general character as a payment provided by the Plan, shall be payable under any law now in force or hereafter enacted to any employee of the Company, the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under the Plan; provided, however, that no benefit payable under this Plan shall be reduced by reason of any governmental benefit payable on account of military service or by reason of any benefit which the recipient would be entitled to receive under the Social Security Act.

The following testimony was given relating to this paragraph:

Q. Under paragraph 25, there was a committee referred to. What committee is this?

A. This is in our Corporate Benefit Office and the committee consists of managers of all departments.

Q. Do you know whether the committee has determined that the New Mexico worker's compensation payments are of the same general character as those paid under the Accident and Sickness Plan?

A. Yes.

Q. Ok. And this has been the position of the committee at all times from 1973 to the present time? ·

A. Yes.

The long-term disability plan specifically includes worker's compensation in the list of benefits which shall be deducted from the benefit paid by this plan.

The following facts are undisputed in this case: (1) plaintiff was injured in an on-the-job accident on January 10, 1983; (2) her salary at that time was $527.50 per week; (3) the compensation rate applicable to plaintiff was $271.76 per week; (4) plaintiff received $527.50 per week when she was unable to work due to the accident; (5) plaintiff went back to work and was downgraded in salary because of a change in position; when she went off work again because of disability related to the January 1983 accident, she was earning $382.50 per week; and (6) plaintiff received $382.50 during the time she was unable to work until her right to full salary under the plans was used up, then she began receiving $191.25 per week as half-salary under the plans. Defendant did neither ask for nor receive a dollar-for-dollar credit. It sought and received a week-for-week credit.

Thus, there are three time periods involved: (a) the time immediately after January 10, 1983, when plaintiff was receiving $527.50 from the plans; (b) the time immediately after she stopped working for the second time, when she was receiving $382.50 from the plans; and (c) the time when the plans only paid half-salary, during which plaintiff was receiving $191.25 from the plans. The way the court worked the credit was so that defendant did not have to pay compensation for the weeks in which plaintiff received either $527.50 or $382.50. Defendant received a credit of $170.62 per week against the $271.76 it owed plaintiff for the weeks it paid plaintiff half-salary pursuant to the plans. (The discrepancy between the credit given of $170.62 and defendant's allegation that half plaintiff's salary would have been $191.25 may be explained by the fact that defendant made a mistake in paying plaintiff benefits.)

Defendant does not believe that plaintiff should be able to get a double recovery of both worker's compensation plus benefits under the plans. Defendant contends that a ruling in plaintiff's favor would encourage it not to pay any benefits under the plans until plaintiff's right to worker's compensation is established. This would result in a period of hardship for plaintiffs, but would insure that defendant would not have to pay both company benefits and worker's compensation contrary to the language in the plans. Plaintiff contends that the Workmen's Compensation Act does not preclude such double recovery and that she should be entitled to get all benefits that both the plans and the law allow. Plaintiff also asserts that the language in the sickness and accident plan is not clear enough to warrant a conclusion that worker's compensation is to be deducted from the benefits under the plans.

Although both parties cited sections in Larson's and cases which support their respective positions, these authorities cannot be categorized into the majority and minority rules, thereby allowing this court to pick which rule it wants to follow. The reason the authorities cannot be categorized is that they rely on statutes peculiar to their jurisdictions or language in benefit plans peculiar to those plans or they decide the case on grounds not related to either statutory or benefit plan language.

4 A. Larson, *The Law of Workmen's Compensation,* Sections 97.51(a) and (c) (1986), states the rules as follows:

As to private pensions or health and accident insurance, whether provided by the employer, union, or the individual's own purchase, there is ordinarily no occasion for reduction of compensation benefits. * * *

* * * * * *

Although avoidance of duplication cannot ordinarily be achieved under American statutes in these cases by, so to speak, trimming at the compensation end, it is frequently achieved by express language trimming at the private-plan end, that is, by reducing the private benefits by the amount of any compensation payments. Even when the language of the plan is not specific, a court may give the benefit of the doubt to a construction that will avoid overlapping payments. [Footnotes omitted.]

Plaintiff relies on the first paragraph of this quote and the cases cited in it. Defendant relies on the second paragraph and the cases cited in it. The problem with both parties' reliance is that the cases they cite are based, for the most part, on specific statutes. Defendant also relies on cases which concentrate on the language of the particular plan being considered. *See Jones & Laughlin Steel Corp. v. Kilburne,* 477 N.E.2d 345 (Ind.App.1985); *Cole v. Armour & Co.,* 257 N.W.2d 381 (Minn.1977).

Yet, just as these cases concentrate so heavily on the plan language without regard to statutory considerations, there exists a case which concentrated on statutory language without regard to contractual considerations outlined in the plan language. In *In re Gould's Case,* 355 Mass. 66, 242 N.E.2d 748 (1968), the court was faced with a statute that prohibited the worker's compensation board from considering benefits derived from other sources. The court said that the board's simple function was to determine what benefits under the worker's compensation law the employee was to get, implying that it would be too hard, and contrary to the statutory language, to spend time interpreting the language in all the plans that could come before the board. Thus, in the absence of express statutory language allowing a set-off for private plans, the board could not consider them.

■ We should note that plaintiff does not rely on the *Gould* case and appears to concede that if the plan language precludes double recovery, then the trial court's judgment could be affirmed, subject to one other argument. Plaintiff argues that the testimony does not establish that the committee determined that New Mexico worker's compensation benefits are of the same general character as the plan benefits. She asserts that the testimony only shows that the witness knew whether the committee made the determination. Plaintiff is reading the testimony too technically. The clear import of the testimony, even though the question was not directly asked, was that the committee affirmatively made the determination that worker's compensation benefits were of the same general character. Moreover, even if there was no such direct testimony, a number of courts have held, apparently as a matter of law in construing the plan, that these plan benefits are of the same general character as worker's compensation benefits. *See, e.g., Western Electric, Inc. v. Ferguson,* 371 So.2d 864 (Miss.1979); *Strohmeyer v. Southwestern Bell Telephone Co.,* 396 S.W.2d 1 (Mo.App.1965).

■ Plaintiff's other argument is that, because her benefits were paid under the "sickness" and "long term disability" portions of the plans rather than the "accident" portion, and because the plans pay different amounts over different times than worker's compensation benefits are paid, the plan is not of the same character as worker's compensation, regardless of the testimony. These contentions are without merit. Because of the cases cited immediately above, the plans are of the same general character as worker's compensation; both are intended to compensate the employee when he is unable to work. *Cf. also Mirabal v. International Minerals & Chemical Corp.,* 77 N.M. 576, 425 P.2d 740 (1967). The fact that the plans pay more,

for a longer time, and for more reasons does not establish that they are not of the same general character. Because it is undisputed that plaintiff received benefits under the plans for the same injury as she was suing for worker's compensation, plaintiff cannot seriously contend that the plan benefits were for a sickness other than her accidental injury. There was simply no evidence to support this contention. Because the payments made by defendant to plaintiff under the plan were characterized as payments for "sickness" does not mean that defendant is not entitled to a credit against the installment payments of worker's compensation determined to be payable.

In resolving the questions raised by plaintiff concerning the propriety of the trial court's allowance of credits, two subissues are presented. First, in the absence of any statutory language whatsoever, and solely in reliance on the language of the plans, may this court say that plaintiff should not get overlapping benefits for this injury? Second, even if this court says that, should the credit be determined in a worker's compensation action or should defendant have to sue plaintiff separately for the difference? The first issue is substantive; the second issue is procedural.

We treat the substantive issue first. The New Mexico Workmen's Compensation Act, NMSA 1978, Sections 52–1–1 through –69 (Orig.Pamp. & Cum.Supp.1985), says nothing about overlapping benefits or credits for defendant in this situation. Section 52–1–56(C) allows defendant to be reimbursed out of recoveries from third-party tort claims. Section 52–1–65 allows credit for worker's compensation benefits furnished under the laws of other jurisdictions. Beyond that, the statute is silent.

*Paternoster v. La Cuesta Cabinets, Inc.,* 101 N.M. 773, 689 P.2d 289 (Ct.App.1984), involved the issue of credit for past overpayments of compensation. This court allowed such credit as a matter of "fundamental fairness." However, *Paternoster* is different than this case in that *Paternoster* did not decide the substantive issue of whether there were, in fact, overpayments as a matter of fundamental fairness. In *Paternoster,* all agreed that there were overpayments. In this case, the substantive issue is whether plaintiff received too much. *Paternoster's* discussion of fundamental fairness was in the context of procedure: would defendants be allowed to claim the credit in the worker's compensation action? Thus, while *Paternoster* may be of some assistance in the procedural aspects of this case, it is of little help in deciding the substantive aspects.

New Mexico does have a few cases involving recovery of benefits other than worker's compensation. In *Clemmer v. Carpenter,* 98 N.M. 302, 648 P.2d 341 (Ct. App.1982), the worker's family was allowed to recover both worker's compensation and federal reserve benefits for the worker's death while the worker was engaged in the dual purpose of driving to both a Coast Guard Reserve meeting and to his office to pick up papers. In *Roybal v. County of Santa Fe,* 79 N.M. 99, 440 P.2d 291 (1968), the worker was allowed to collect both his salary and worker's compensation benefits. The court found that the salary was not intended to be a gratuity. *See also Walters v. General Accident & Fire Assurance Corp.,* 119 So.2d 550 (La.App.1960), another case cited by plaintiff dealing with the concept of gratuities. In *Snead v. Adams Construction Co.,* 72 N.M. 94, 380 P.2d 836 (1963), the worker was allowed to collect both veterans' disability and worker's compensation benefits. *See also Winter v. Roberson Construction Co.,* 70 N.M. 187, 372 P.2d 381 (1962) (unemployment compensation).

Because of the importance of the statutory scheme to rights under the worker's compensation law, it can easily be said in this case that, because there is no statute expressly allowing credit, credit should not be allowed. We reject this analysis. Our reason for the rejection is that plaintiff's rights do not only flow from the statute. The benefit plan is in the nature of a contract and plaintiff's rights should be equally governed by it. Our reading of

the benefit plans, which is supported by both the testimony and the cases cited, is that plaintiff cannot get both worker's compensation and the benefits under the plans. Thus, as a matter of substantive right under the plans, plaintiff does not receive both, and defendant should not have to pay both.

The next question, then, is whether our courts can trim at the compensation end to effectuate the trim that should have been made at the private plan end. On this question, *Paternoster* provides substantial guidance. *Paternoster* adopts the following rationale:

"In our view, the voluntary payment of compensation benefits during the pendency of [compensation] proceedings ... is a matter of great importance to an injured worker and should not be discouraged. Any statutory interpretation which would penalize an employer who voluntarily makes weekly payments to an injured employee in excess of his ultimate liability would certainly discourage voluntary payment by his employers and would therefore constitute a disservice to injured workers generally."

* * * We agree with the policy of encouraging voluntary, prejudgment payments. The employer, in so making these payments, furthers the prime goal of the Act, which is to protect an employee against want, and to prevent an employee from becoming a public charge. ... Using "fundamental fairness" as our guideline, therefore, we believe it equitable to acknowledge, in some fashion, the employer's prejudgment payment contribution.

101 N.M. at 777, 689 P.2d at 293 (citation omitted) (*quoting in part Casualty & Surety Co. v. Adkins*, 619 S.W.2d 502, 503–04 (Ky.App.1981)). Cases allowing credit based on private plans contain the same rationale. *See, e.g., Cowan v. Southwestern Bell Telephone Co.*, 529 S.W.2d 485 (Mo.App.1975). Plaintiff contends that this rationale should not be used because defendant is obligated to pay. Whether or not defendant is so obligated, the fact remains that people sometimes do not live up to their obligations and, therefore, the law

does what it can to encourage them. In addition, adoption of the rationale of *Paternoster* and *Cowan* would be consistent with the general distaste courts have for allowing double recovery. *See* Larson, *supra*, at 18–92.

Finally, plaintiff contends that if this court rules that, as a matter of substantive right under the plans, plaintiff does not have a right to both plan benefits and worker's compensation, then the procedural remedy defendant has is not an off-set in the worker's compensation case. Rather, defendant's remedy is to file an independent suit. Under the fundamental fairness doctrine of *Paternoster*, plaintiff's interpretation would lead to an unnecessary multiplicity of suits. If defendant is entitled under the plans to recover excess payments it made, then such recovery is easily accomplished as part of the worker's compensation judgment.

Thus, summarizing on this issue: Most of the authorities relied upon by both plaintiff and defendant are inapposite because plaintiff's authorities rely on statutes precluding set-offs for other categories of benefits while defendant's authorities rely on statutes permitting such set-offs. Plaintiff's position is best supported by those cases which consider worker's compensation remedies to be strictly statutory. Therefore, what is not provided for in the statutes is not possible. Defendant's position is best supported by those cases which consider language in a plan to be controlling and which consider the policy effects of a decision not allowing a set-off—that defendants will then be reluctant to voluntarily pay benefits. Moreover, defendant's position is supported by a general distaste for double recovery and the abhorrence of the notion that a worker should get more money for being disabled than for working.

We reach a decision in defendant's favor primarily based on the language of the plan itself. This is the document that controls the rights as between the parties. It does not allow duplication of benefits as a matter of substance. As a matter of procedure, once the substantive issue is decided, then fairness requires that defendant be allowed the credit in this proceeding.

Where the Workmen's Compensation Act is silent, fundamental fairness must be our guideline. *Transport Indemnity Co. v. Garcia,* 89 N.M. 342, 552 P.2d 473 (Ct.App. 1976).

## II. Scheduled injury.

The trial court found that plaintiff suffered injuries to her right wrist and right shoulder as a direct and proximate result of her accident. Plaintiff argues that the trial court erred in limiting her recovery under the Scheduled Injury Section, Section 52–1–43, instead of awarding partial disability or total disability.

The problem with this issue is that, although there was substantial evidence to support the trial court's determination that this is a scheduled injury, the trial court found that plaintiff suffered a "shoulder injury." There is a preliminary question: is a "shoulder injury" a scheduled injury? We rule that it is not. However, because New Mexico courts have not clearly decided this question of law, we do not believe that the trial court's findings are clear and unambiguous enough to apply the rule that findings prevail over conclusions. *See Roybal v. Chavez Concrete & Excavation Contractors, Inc.,* 102 N.M. 428, 696 P.2d 1021 (Ct.App.1985). Accordingly, we remand on this issue.

We relate the facts of this issue first. Plaintiff fell onto her right wrist. This injured the right wrist and caused carpal tunnel syndrome. An operation for the syndrome was somewhat unsuccessful. Plaintiff continued to have pain. There was a second operation which revealed a neuroma. An operation to treat the neuroma would be dangerous. Plaintiff refused to have it and defendant does not contend that such refusal was unreasonable.

Because of the wrist injury, plaintiff developed a condition called reflex sympathetic dystrophy in her shoulder. This condition causes pain between the shoulder and the neck, and it limits the range of motion in plaintiff's arm.

According to plaintiff's evidence, she was totally disabled. She could not do anything. She suffered terrible pain, and the pain medication she took made her drowsy so that she could not work.

According to defendant's evidence, plaintiff's doctors released her to go back to work with restrictions on the use of her right arm. There were jobs available that plaintiff could perform even with her restrictions. Plaintiff owned a boutique. Defendant's private investigators observed plaintiff working at the boutique. Plaintiff used her right arm to remove jewelry from a case, move a bar stool, write, use a calculator, take dresses from a rack, pick up things, support her chin, and pull back a chair.

Pertinent findings include: that plaintiff suffered injuries to her right wrist and shoulder (# 1); that as a direct result of the wrist problem, plaintiff developed a reflex sympathetic dystrophy in her shoulder and that this condition causes pain from the top of the shoulder to the bottom of the neck and limits the range of motion in plaintiff's arm (# 6); and as a result of the accident plaintiff is temporarily "disabled in her dextrous member (shoulder injury)" (# 7). The court concluded that plaintiff is disabled in her dextrous member. Judgment was for two hundred weeks of compensation payments. The court orally commented that the injury was limited to the hand and shoulder and there was not involvement to the body; there was no total and permanent injury to the body as a whole; there was only a scheduled injury.

To the extent that plaintiff claims that she is totally disabled, *see Hise Construction v. Candelaria,* 98 N.M. 759, 652 P.2d 1210 (1982), the evidence on the question was conflicting. When the evidence is conflicting, the trial court's decision, not finding a total disability, will be affirmed. *Sanchez v. Homestake Mining Co.,* 102 N.M. 473, 697 P.2d 156 (Ct.App.1985).

It is to the extent that plaintiff claims that she suffered a separate and distinct impairment to a non-scheduled body part, *see American Tank & Steel Corp. v. Thompson,* 90 N.M. 513, 565 P.2d 1030 (1977), that this issue becomes problematic. The problem is that the trial court's

findings are inconsistent. On the one hand, the court found a scheduled injury—that the injury is to the dextrous member. On the other hand, it found a shoulder injury. Is a shoulder injury a non-scheduled injury?

We think so. Section 52–1–43(A) lists specific body members, injury to which is compensable by a certain number of weeks of compensation. The one issue here is "(1) one arm at or near the shoulder." Because worker's compensation statutes should be liberally construed in the worker's favor to insure the full measure of his exclusive statutory remedy, *Evans v. Stearns-Roger Manufacturing Co.*, 253 F.2d 383 (10th Cir.1958), and because any reasonable doubts should be resolved in favor of the workman, *Shillinglaw v. Owen Shillinglaw Fuel Co.*, 70 N.M. 65, 370 P.2d 502 (1962), we believe that the statutory language should be construed to include only injuries to the arm itself and not injuries to the shoulder.

Other jurisdictions have ruled similarly. *M.R. Thomason & Associates v. Jones*, 48 Ala.App. 67, 261 So.2d 899 (1972); *Safeway Stores, Inc. v. Industrial Commission*, 27 Ariz.App. 776, 558 P.2d 971 (1976); *Hernandez v. De Carlo*, 116 So.2d 429 (Fla. 1959). Moreover, we do not read *Maschio v. Kaiser Steel Corp.*, 100 N.M. 455, 672 P.2d 284 (Ct.App.1983), to require a different result. In that case, the trial court found an injury to the leg at the knee level and the statutory language was "one leg at or above the knee, where stump remains sufficient to permit the use of an artificial limb." Here, one part of the trial court's inconsistent findings find a shoulder injury and not an arm injury at the shoulder.

Finally, *Hamilton v. Doty*, 71 N.M. 422, 379 P.2d 69 (1962), supports the proposition that injuries to the shoulder such as are present here may not be scheduled. *Hamilton* decided that a shoulder dislocation, which caused a secondary injury to the trapezius (back) muscle, pain spreading around the neck and to the spine, and loss of sleep, did not limit compensation to the schedule. There are similar findings of fact in this case, particularly finding No. 6, noted above.

Accordingly, we believe that based on the evidence in this case, the trial court could have found a shoulder (non-scheduled) injury or could have found an injury only to the dextrous arm at or near the shoulder (scheduled). Either finding would have been supported by substantial evidence.

If findings are inconsistent and cannot be reconciled, an appellate court may remand for additional findings. NMSA 1978, Civ.P.R. 52(B)(1)(g) (Repl. Pamp.1980). *See also Hillelson v. Republic Insurance Co.*, 96 N.M. 36, 627 P.2d 878 (1981); *Michelson v. Michelson*, 89 N.M. 282, 551 P.2d 638 (1976). Where there is doubt as to the findings adopted by the trial court, the cause will be remanded for additional findings and conclusions. *Martinez v. Martinez*, 101 N.M. 493, 684 P.2d 1158 (Ct.App.1984). Because of the doubt as to what the trial court intended to do, as evidenced by the inconsistency in its findings, we remand this case.

### III. Attorney fees.

Plaintiff requests attorney fees. Whether she is awarded fees or not depends on the resolution of the case by the trial court. Until the trial court decides, any award of fees is premature. *Ortiz v. Ortiz & Torres Dri-Wall Co.*, 83 N.M. 452, 493 P.2d 418 (Ct.App.1972).

### CONCLUSION

The trial court is affirmed on the first issue and the case remanded on the second issue for new findings and conclusions, and a new judgment, if necessary. Any award of attorney fees on appeal must await the determination of the trial court on the second issue and are thus premature at this time. Affirmed in part and reversed in part.

IT IS SO ORDERED.

DONNELLY and BIVINS, JJ., concur.